**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shalanda Marie Looney,<br><br>Plaintiff,<br><br>v.<br><br>City of Surprise, et al.,<br><br>Defendants. | No. CV-25-04004-PHX-MTL<br><br>**ORDER** |

Before the court is pro se Plaintiff Shalanda Marie Looney's Complaint (Doc. 1) and Application to Proceed In Forma Paupers (Doc. 2).

**I.    BACKGROUND**

Ms. Looney is an attorney. (Doc. 1 at 1.) On or about October 11, 2024, she received a letter from the City of Surprise Business Licensing Division "advis[ing] that a city business license is required and must be obtained per City of Surprise Municipal Code." (*Id.* at 5.) The letter provides an excerpt of the applicable municipal code, a link to the entire municipal code, a link to apply for a business license, and contact information. (*Id.*) The letter says nothing more. (*Id.*)

Ms. Looney assumes, based on information and belief alone, "no similar letters have been issued to non-Black attorneys." (*Id.*) On October 28, 2024, by telephone, a city employee reiterated to Ms. Looney "that she could not practice law in the City without a business license." (*Id.*) Ms. Looney also sent an email to the City requesting an explanation of the letter. (Doc. 1-1 at 6-8.) The City responded that the letter was sent in error and

1 asking her to disregard it. (*Id.* at 6.) Beyond the letter and this brief correspondence, Ms. Looney does not allege that the City took further action.

On October 15, 2025—nearly one year after the City indicated Ms. Looney could disregard the letter—she sent a demand letter to the City, making several requests, including compensatory damages, documentation that race played no role in its letter to her, and a written public retraction or apology. (*Id.* at 4, 7-8.) Ms. Looney stated that if she did not receive a satisfactory response, she would file suit. (*Id.* at 8.) She imposed a deadline of October 30, 2026, for Defendants to respond. (*Id.*) Ms. Looney filed suit on October 27, 2025. (Doc. 1.) Along with the Complaint, she filed an Application to Proceed In Forma Pauperis (Doc. 2.) Ms. Looney asserts claims under 42 U.S.C. §§ 1981 and 1983, naming the City of Surprise and unidentified employees or agents of the City as defendants. (Doc. 1 at 1, 4.) Ms. Looney alleges the defendants intentionally obstructed her federally protected right to make and enforce contracts. (*Id.* at 1.) She requests nominal, compensatory, and punitive damages as well as injunctive and declaratory relief. (*Id.* at 16.)

Ms. Looney claims that despite the City's statement that she should disregard the letter, she is "still bound by the restrictions to make contracts and enjoy the benefits thereof." (Doc. 1 at 7.) She asserts that she has suffered reputational harm as well as economic damages due to lost potential clients. (Doc. 1-1 at 6-7.)

## II.     IFP APPLICATION

A party may file a lawsuit without paying the filing fee if the Court grants leave to proceed in forma pauperis. 28 U.S.C. § 1915. Ms. Looney's application indicates that she has insufficient funds to prepay the filing fee for this action. Accordingly, the Court will grant the application (Doc. 2).

## III.    STATUTORY SCREENING OF IFP COMPLAINTS

The Court is required to screen complaints brought in forma pauperis. 28 U.S.C. § 1915(e)(2). The Court must dismiss a Complaint, or a portion thereof, if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which

relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915(e)(2)(B).

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Further, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a claim, a court must assess whether there are other "more likely" explanations for a defendant's conduct. *Id.* at 681.

Although "[a] document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation modified), this same consideration is not granted to pro se attorneys. *Huffman v. Lindgren*, 81 F.4th 1016, 1020–21 (9th Cir. 2023). Courts grant leeway to pro se parties because the pro se litigant is "[p]resumably unskilled in the law" and "far more prone to making errors in pleading than the person who benefits from the representation of counsel." *Id.* at 1021 (quoting *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc)). Because these considerations do not apply to practicing attorneys, the Ninth Circuit has "declined to extend the liberal pleading standard to pro se attorneys," joining the other circuits that have reached the issue. *Id.* at 1020.

## IV. DISCUSSION

### A. Count One: 42 U.S.C. § 1981 Claim

Ms. Looney brings a claim pursuant to 42 U.S.C. § 1981 against all defendants, asserting that the letter from the City of Surprise and her phone call with the City employee were acts of intentional discrimination because they obstructed her right to make and enforce contracts. (*Id.* at 13.) But "Section 1981 creates federal rights but does not provide an express cause of action . . . against state actors." *Yoshikawa v. Seguirant*, 74 F.4th 1042, 1044 (9th Cir. 2023) (en banc). Ms. Looney improperly purports to allege Count One pursuant to Section 1981, so the Court will dismiss the claim.

### B. Count Two: 42 U.S.C. § 1983 Claim

Ms. Looney also brings a claim pursuant to 42 U.S.C. § 1983 against all defendants, alleging a violation of her equal protection rights. (Doc. 1 at 14.) She alleges that, as a member of a protected class, the city's advising her of the city's business license requirement amounts to an unlawful denial of her right to make contracts and enjoy the benefits thereof. (*Id.*) She alleges that she was subjected "to different licensing requirements than White attorneys." (*Id.*) She states that the city is liable for these violations because they "resulted from its official policy, widespread custom, or failure to train or supervise employees. (*Id.* at 15.)

"To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Furnace v. Sullivan*, 705 F.3d 1021,1030 (9th Cir. 2013) (citation modified) (rejecting equal protection claim where inmate failed to show that he was treated differently than any other inmates in the relevant class).

Although § 1983 applies to municipalities, they may not be held responsible for the acts of their employees under a respondeat superior theory of liability. *See Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021) ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be

held liable under § 1983 on a *respondeat superior* theory." (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). In order to impose liability on a municipality under § 1983, a plaintiff must show that there was an underlying constitutional violation that was caused by action pursuant to an official municipal policy or custom. *Connick v. Thompson*, 563 U.S. 51, 60 (2011); *see also Pasadena Republican Club v. W. Just. Ctr.*, 985 F.3d 1161, 1172 (9th Cir. 2021) ("To establish *Monell* liability under § 1983, the constitutional violation must be caused by a municipality's 'policy, practice, or custom' or be ordered by a policy-making official.").

"Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61. A plaintiff seeking to impose municipal liability must identify the specific policy that caused her injury. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403-04 (1997) ("Locating a 'policy' ensures that a municipality is held liable only for those deprivations [or] . . . acts [which] may fairly be said to be those of the municipality.").

In the absence of a written policy, a plaintiff may still be able to establish municipal liability by showing the violation arose out of a widespread, permanent, and well-settled custom. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) ("[T]he Court has long recognized that a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." (citation omitted) (internal quotations omitted)). Allegations of sporadic incidents or a single instance of misconduct are not sufficient to establish such a policy or custom. *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 884 (9th Cir. 2022).

A municipality's failure to train its employees may constitute an official government policy for purposes of § 1983 but only in limited circumstances where deliberate indifference can be shown. *Connick*, 563 U.S. at 61. The plaintiff's failure to train claim must include facts sufficient to support a reasonable inference of a municipal training

policy that amounts to deliberate indifference to constitutional rights and that the injury would not have resulted with proper training. *Benavidez*, 993 F.3d at 1153-54. Deliberate indifference is a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of [its] action." *Brown*, 520 U.S. at 410.

### 1.     Claim Against the City of Surprise

"A single constitutional deprivation ordinarily is insufficient to establish a longstanding practice or custom," so the letter by itself is not enough to sustain a claim under § 1983. *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999) (holding that the plaintiffs' allegations that a county official singled them out for unique treatment was insufficient to establish the required practice or custom). Beyond the letter, Ms. Looney makes other general allegations of discriminatory practices in Arizona, but she does not tie these allegations to a specific city policy. *See Brown*, 520 U.S. at 403-04.

The general allegations are insufficient to establish a municipal custom that would give rise to liability. Ms. Looney raises a number of incidents that, by virtue of their existence alone, do not implicate racial discrimination—notwithstanding her conclusory, self-serving statements that they do. (*See generally* Doc. 1 at 10-13.) For example, Ms. Looney raises an example where she arrived early to a hearing and was asked by the Courtroom Assistant to wait outside the courtroom. (Docs. 1 at 10, 1-1 at 11.) Although the court admitted she was asked to leave in error, Ms. Looney does not allege any facts suggesting that this was due to racial discrimination beyond an observation that she was the only black person in the courtroom. (Docs. 1 at 10, 1-1 at 11, 13.)

Moreover, many of the incidents presented do not implicate any defendant at all, such as a pending racial discrimination lawsuit against the Town of Quartzite. (Doc. 1 at 11.) Ms. Looney fails to mention the fact that this lawsuit was filed by her son. *Gates v. Town of Quartzite*, No. CV-25-3627-PHX-SHD (D. Ariz. Feb. 5, 2026). Determinatively, Ms. Looney does not identify any other instance in which the alleged policy or custom resulted in a constitutional violation. *Gordon v. County of Orange*, 6 F.4th 961, 974 (9th Cir. 2021). These allegations are "little more than isolated or sporadic incidents that are

insufficient to establish *Monell* liability." *Sabra*, 44 F.4th at 884 (citation modified).

Likewise, Ms. Looney cannot establish municipal liability based on failure to train because she does not allege sufficient facts that would support a reasonable inference of a constitutional violation caused by a municipal training policy that would amount to deliberate indifference to constitutional rights. *Benavidez*, 993 F.3d at 1153. Looney only raises a single instance of allegedly unlawful conduct, does not demonstrate the City's deliberate indifference, and does not cite any training policy.

### 2. Claim Against Individual Defendants

Ms. Looney does not allege facts in support of her claim that the individual defendants imposed the city's license requirement on her, but not non-black attorneys. She supplies a naked inference that no similar letters were issued to non-Black attorneys, but no particularized facts to support the inference. (Doc. 1 at 5.) The Court need not accept her conclusory allegation as true. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Indeed, the Court has not found any facts to suggest that any of the defendants knew Ms. Looney was Black prior to her self-identification on the October 28, 2024, phone call, over two weeks after she had received the letter in question. Ms. Looney's allegations are not sufficient to sustain a claim against the individual defendants.

In sum, the allegations in Ms. Looney's complaint are speculative and conclusory, failing to allege a short and plain statement of her claims as required under Rule 8 of the Federal Rules of Civil Procedure. Her claims must therefore be dismissed. The Court will dismiss this claim with leave to amend. *See Myers-Armstrong v. Actavis Totowa, LLC*, 382 F. App'x 545, 547 (9th Cir. 2010) (affirming dismissal for failure to state a claim in part because the complaint gave "no notice of the alleged illegal act and, therefore, fail[ed] to satisfy Federal Rule of Civil Procedure 8(a), because it [did] not set forth 'a short plain statement of the claim showing that the pleader is entitled to relief.'").

. . . .

. . . .

. . . .

**V.    CONCLUSION**

Accordingly,

**IT IS ORDERED** that Plaintiff's Application to Proceed In Forma Pauperis (Doc. 2-1) is **GRANTED**.

**IT IS FURTHER ORDERED** dismissing Plaintiff's Complaint (Doc. 1).

**IT IS FURTHER ORDERED** that Plaintiff must file an amended complaint no later than **March 18, 2026**.

**IT IS FURTHER ORDERED** that, if Plaintiff files an amended complaint, the Clerk of Court shall not issue summons until the Court screens the amended complaint and orders service consistent with 28 U.S.C. § 1915(d).

**IT IS FINALLY ORDERED** that, if Plaintiff does not file an amended complaint, the Clerk of Court must, without further notice, dismiss this case on **March 19, 2026**.

Dated this 18th day of February, 2026.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge